IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY BAYNARD, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 19-CV-5459 |
| : | |
| JOHN WETZEL, *et al.*, : | |
|     Defendants. : | |

**MEMORANDUM**

**TUCKER, J.**                                                                                                         **MAY 21, 2020**

Plaintiff Henry Baynard brings this civil action, pursuant to 42 U.S.C. § 1983, against prison officials at several facilities operated by the Pennsylvania Department of Corrections as well as medical professionals who treated him at those facilities. Baynard generally alleges that the Defendants surveilled his thoughts, broadcasted his thoughts to other inmates and individuals outside the institution, and failed to investigate and stop sexual harassment resulting from the publication of his thoughts. Baynard seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Baynard leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice as factually baseless, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[1]

---

[1] The Court previously dismissed Baynard's case without prejudice due to his failure to file a certified copy of his prison account statement in accordance with 28 U.S.C. § 1915(a)(2) and the Court's Order. (*See* ECF Nos. 4 & 5.) Baynard filed a Motion for Reconsideration and an appeal; his appeal was subsequently dismissed. (ECF Nos 6-9.) As it is apparent that Baynard intended to prosecute this case and as he filed a certified copy of his prisoner account statement, the Court granted the Motion for Reconsideration and reopened this case. (*See* ECF Nos. 10-12.) Accordingly, Baynard's Complaint and his request to proceed *in forma pauperis* are currently before the Court.

1

I.      **FACTUAL ALLEGATIONS**[2]

The theme underlying Baynard's Complaint is that prison officials at SCI-Greene, SCI-Fayette, SCI-Graterford, and SCI-Phoenix "provid[ed] inmates with tablets to see inside plaintiff Baynard's cell and see his thoughts, play[ed] his thoughts on the PA of each unit he was housed, us[ed] homosexual inmates to attempt to homosexualize him and torture him psychologically and enable[ed] inmates to do this from other institutions" in violation of Baynard's constitutional rights. (ECF No. 2 at 13.)[3] Baynard appears to be alleging that the conduct in question began on February 6, 2018, when he was placed in a psychiatric observation cell at SCI-Greene. (*Id.* at 3.) He contends that an unidentified correctional officer used the facility's PA system to call him a homosexual, broadcast old phone conversations between Baynard and his loved ones, and broadcast Baynard's own thoughts to other inmates. (*Id.*) Other inmates were also allegedly given the ability to see inside Baynard's cell by hidden cameras, which permitted them to see Baynard's thoughts and observe him using the toilet. (*Id.*)

Baynard claims he "was used as entertainment by these inmates and eventually loved ones as well who were free citizens that were allowed to 'skype' and see the inside of [his] cell and thoughts." (*Id.* at 4.) The correctional officer at SCI-Greene also allegedly revealed that he had been watching Baynard and monitoring his thoughts for five months due to an "investigation." (*Id.*) Baynard was eventually moved out of the psychiatric observation cell, but the monitoring and broadcasting of his thoughts and conduct continued. (*Id.*) Other inmates' voices were also allegedly broadcast over the prison's PA system, and those inmates, in

---

[2] The following allegations are taken from the Complaint and the exhibits attached to the Complaint.

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

particular certain homosexual inmates, would taunt and harass him with sexualized noises and comments, sometimes by using the voices of Baynard's loved ones.  (*Id*. at 4-5 & 7.)

The monitoring and broadcasting of Baynard's thoughts and the voices of other inmates continued for months, even when Baynard was assigned to a new housing unit or transferred to another facility.  Staff, inmates, and others watching through Skype continued to observe Baynard showering and using the toilet.  (*Id.* at 5.)  Baynard alleges that prison officials at SCI-Phoenix participated in the "torture" by removing most of the female correctional officers from the special unit where Baynard was housed and "assign[ing] Hispanic males or homosexual-effeminate males to work the unit so the homosexual inmate could play his game."  (*Id*. at 8.)  Baynard also alleges that he would not have been placed on the unit where this occurred but for "false results of the psychological evaluation given by Lisa Duncan . . . [identified as a psychologist at SCI Fayette]" which concluded that Baynard was "schizotypac." (*Id*. at 9.)  Baynard adds that a psychiatrist at SCI Fayette "cajoled" him into taking Haldol and Cogentin prior to his transfer to SCI Phoenix.  (*Id.* at 10.)

As a result of the publication of his thoughts and actions, as well as the voices and taunts directed at him, Baynard filed grievances and notices, as well as complaints under the Prison Rape Elimination Act ("PREA").  He alleges that authorities at times ignored his complaints and at other times, failed to adequately address them.  Baynard also alleges that, "although everyone can hear [his] thoughts, every sound in [his] cell and the voice of the homosexual inmate along with [his] female loved ones['] voices on the PA system of the unit they pretend as if they don't."  (*Id.* at 9; *see also id.* at 11.)

Based on the above and additional similar allegations, Baynard seeks damages, a declaration that his rights were violated, and "a preliminary and permanent injunction ordering

[certain Defendants] to stop reading [his] thoughts and take the tablet from the homosexual inmate which allows him to see [Baynard's] thoughts and cell and give him access to [Baynard's] phone call[s]." (*Id.* at 14.) Baynard also asks for an injunction to prevent certain Defendants from monitoring his "every act by 'spying' on [him] through hidden cameras in [his] wall" and to change the relevant security policies. (*Id.*)

## II.  STANDARD OF REVIEW

The Court will grant Baynard leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  As Baynard is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.  DISCUSSION

Baynard may not proceed on his claims because his allegations are factually baseless.  As summarized above, Baynard asserts that prison officials, other inmates, and members of the public are watching his every move and listening to his thoughts through the public address system in various state correctional facilities.  He also alleges that inmates and staff use these same systems to taunt and harass him, at times by using the voices of his loved ones.  Overall,

---

[4] However, as Baynard is incarcerated, he will be obligated to pay the filing fee in installments, pursuant to 28 U.S.C. § 1915(b).

his allegations rise to the level of factually frivolous. As these allegations underlie Baynard's claims, the Court will dismiss Baynard's Complaint on that basis.[5]  *See Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (per curiam) (dismissing appeal as frivolous where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Golden v. Coleman*, 429 F. App'x 73, 74 (3d Cir. 2011) (per curiam) (finding factually frivolous allegations that "various prison employees at the State Correctional Institution in Fayette, Pennsylvania, where [the plaintiff] was formerly incarcerated, violated his constitutional rights by planting 'Government Micro Eye Cameras' in his food and broadcasting images obtained from those cameras on prison television"); *Jorge v. Torres*, Civ. A. No. 18-14674, 2019 WL 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's factual allegations that the Police are monitoring his every move and that the Police do so by telephone recruitment 'of informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (citing cases)).

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Baynard leave to proceed *in forma pauperis* and dismiss his Complaint. Baynard will not be permitted to file an amended complaint

---

[5] To the extent Baynard is challenging the medical opinion of the psychiatrists and psychologists who treated him in a manner that is not without factual merit, he still has not alleged a basis for a claim. To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). However, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Nothing in Baynard's Complaint provides a basis for a deliberate indifference claim. Even if Baynard disagreed with the diagnosis or treatment decisions of the psychiatrists and psychologists who treated him, that disagreement would not support a constitutional claim.

because the Court concludes that amendment would be futile. An appropriate Order follows, which will be docketed separately.

**BY THE COURT:**

**/s/Petrese B. Tucker**

**PETRESE B. TUCKER, J.**